UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| STEPHEN O'CONNOR, Individually and for Others Similarly Situated | Case No. _____ |
| v. | Jury Trial Demanded |
| GRADY MEMORIAL HOSPITAL CORPORATION d/b/a GRADY HEALTH SYSTEM | FLSA Collective Action |

# COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Stephen O'Connor (O'Connor) brings this collective action to recover unpaid wages and other damages from Grady Memorial Hospital Corporation d/b/a Grady Health System (Grady).

2. Grady employs O'Connor as one of its Hourly Employees (defined below).

3. O'Connor and the other Hourly Employees regularly work more than 40 hours in a workweek.

4. But Grady does not pay O'Connor and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for hours they work in excess of 40 in a workweek.

5. Instead, Grady pays O'Connor and the other Hourly Employees non-discretionary bonuses and shift differentials it excludes from these

employees' regular rates of pay for overtime purposes (Grady's "bonus pay scheme").

6. Grady's bonus pay scheme violates the Fair Labor Standards Act (FLSA) by failing to compensate O'Connor and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

## JURISDICTION & VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

8. This Court has general personal jurisdiction over Grady because it is a Georgia corporation.

9. Venue is proper because Grady maintains its principal place of business in Atlanta, Georgia, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

10. Grady has employed O'Connor as paramedic since approximately July 2018.

11. Throughout his employment, Grady has paid O'Connor under its bonus pay scheme.

12. O'Connor's written consent is attached as **Exhibit 1**.

13. O'Connor brings this collective action on behalf of himself and similarly situated Grady employees.

14. The putative FLSA collective is defined as:

> **All hourly Grady employees who were paid under its bonus pay scheme during the last three years through final resolution of this action (the "Hourly Employees").**

15. Grady is a Georgia corporation with its principal place of business in Atlanta, Georgia.

16. Grady may be served with process through its registered agent: **Timothy Jefferson, 80 Jesse Hill Jr Drive SE, Atlanta, Georgia 30303**, or wherever he may be found.

## FLSA COVERAGE

17. At all relevant times, Grady was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

18. At all relevant times, Grady was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

19. At all relevant times, Grady was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective

equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

20. At all relevant times, Grady had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

21. At all relevant times, O'Connor and the other Hourly Employees were Grady's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

22. At all relevant times, O'Connor and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

23. Grady touts that it "provides the highest-quality healthcare from renowned physicians and the latest treatments in every discipline, including primary care, trauma, stroke, and 80 other specialty services."[1]

24. To meet its business objectives, Grady employs workers, including O'Connor and the other Hourly Employees, to provide care for patients.

25. For example, Grady has employed O'Connor as a paramedic in and around the Atlanta area since approximately July 2018.

---

[1] https://www.gradyhealth.org/ (last visited November 10, 2025).

26. O'Connor's primary job duties include responding to 911 emergency calls, evaluating patients, providing emergency medical care to patients, and transporting patients to appropriate medical facilities.

27. Throughout his employment, O'Connor has regularly worked more than 40 hours a workweek.

28. Indeed, O'Connor typically works approximately 3 to 5 13-hour shifts "on the clock" (39 to 65 hours a workweek).

29. Grady paid O'Connor approximately $37.14 an hour.

30. Likewise, the other Hourly Employees typically work approximately 52 to 65 hours a workweek "on the clock."

31. And O'Connor and the other Hourly Employees are required to report their "on the clock" hours through the timekeeping system Grady selects and controls.

32. But Grady does not pay O'Connor and the other Hourly Employees at the required premium overtime rates for all hours worked in excess of 40 in a workweek.

33. Instead, Grady pays O'Connor and the other Hourly Employees under its bonus pay scheme.

34. Specifically, Grady agrees to pay and subsequently pays O'Connor and the other Hourly Employees non-discretionary bonuses, including shift

bonuses, sign on bonuses, retention bonuses, straining bonuses, as well as shift differentials, based on Grady's criteria.

35. But Grady excludes these non-discretionary bonuses and shift differentials from their regular rates of pay for overtime purposes.

36. For example, during the pay period ending August 23, 2025, Grady paid O'Connor a "Weekend Diff" and "Preceptor Pay" that it excluded from his regular rate of pay for overtime purposes:

| Description | Rate | Current Hours | Earnings | YTD Hours | Earnings |
|---|---|---|---|---|---|
| Regular Pay | 37.140000 | 80.00 | 2,971.20 | 1,296.87 | 48,165.75 |
| Weekend Diff | 6.000000 | 26.50 | 159.00 | 439.21 | 2,186.62 |
| Overtime | 55.710000 | 26.00 | 1,448.46 | 276.71 | 15,415.52 |
| Differential Shift 2 | 2.250000 | 36.52 | 82.17 | 597.54 | 1,344.49 |
| Preceptor Pay | 1.500000 | 13.00 | 19.50 | 278.52 | 417.81 |
| Shift 2 Overtime Differential | 3.375000 | 12.42 | 41.92 | 157.67 | 532.15 |
| EMS Premium Pat $10.00 | | | 0.00 | 16.97 | 169.70 |
| Holiday Premium - Non-Exempt | | | 0.00 | 50.61 | 939.82 |
| PTO Vacation | | | 0.00 | 130.00 | 4,828.20 |
| TOTAL: | | 106.00 | 4,722.25 | 3,244.10 | 74,000.06 |

37. Thus, under its bonus pay scheme, Grady does not pay O'Connor and the other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

**COLLECTIVE ACTION ALLEGATIONS**

38. O'Connor brings his claims as a collective action under Section 216(b) of the FLSA on behalf of himself and the other Hourly Employees.

39. Like O'Connor, the other Hourly Employees are victimized by Grady's bonus pay scheme.

40. Other Hourly Employees worked with O'Connor and indicated they were paid in the same or similar manner under Grady's bonus pay scheme.

41. Based on his experience with Grady, O'Connor is aware Grady's bonus pay scheme was imposed on other Hourly Employees.

42. The Hourly Employees are similarly situated in the most relevant respects.

43. Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked.

44. Therefore, the specific job titles or locations of the Hourly Employees do not prevent collective treatment.

45. Rather, Grady's bonus pay scheme renders O'Connor and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rates—based on all remuneration—for all hours worked in excess of 40 in a workweek.

46. Grady's records reflect the number of hours the Hourly Employees recorded working "on the clock" each week.

47. Grady's records also show it paid O'Connor and the other Hourly Employees non-discretionary bonuses and shift differentials that it excluded from their regular rates of pay for overtime purposes.

48. The back wages owed to O'Connor and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

49. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Grady's records, and there is no detraction from the common nucleus of liability facts.

50. Therefore, the issue of damages does not preclude collective treatment.

51. O'Connor's experiences are typical of the experiences of the other Hourly Employees.

52. O'Connor has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent collective treatment.

53. Like each Hourly Employee, O'Connor has an interest in obtaining the unpaid wages owed under federal law.

54. O'Connor and his counsel will fairly and adequately protect the interests of the Hourly Employees.

55. O'Connor retained counsel with significant experience handling complex collective action litigation.

- 9 -

56. Absent this collective action, many Hourly Employees will not obtain redress for their injuries, and Grady will reap the unjust benefits of violating the FLSA.

57. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

58. Indeed, the multiplicity of actions would create hardship to the Hourly Employees, the Court, and Grady.

59. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

60. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

61. Among the common questions of law and fact are:

    a. Whether Grady paid the Hourly Employees non-discretionary bonuses;

    b. Whether Grady failed to include non-discretionary bonuses and shift differentials in calculating the Hourly Employees' regular rates of pay;

  c. Whether Grady failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked;

  d. Whether Grady's decision not to pay the Hourly Employees overtime wages at the required rates—based on all remuneration—for all overtime hours worked was made in good faith; and

  e. Whether Grady's violations were willful.

62. As part of its regular business practices, Grady intentionally, willfully, and repeatedly violated the FLSA with respect to O'Connor and the other Hourly Employees.

63. There are many similarly situated Hourly Employees who have been denied overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

64. The Hourly Employees are known to Grady, are readily identifiable, and can be located through Grady's business and personnel records.

## **GRADY'S VIOLATIONS WERE WILLFUL**

65. Grady knew it employed O'Connor and the other Hourly Employees.

66. Grady knew it was subject to the FLSA's overtime provisions.

67. Grady knew the FLSA required it to pay non-exempt employees, including O'Connor and the other Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

68. Grady knew O'Connor and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because these employees were required to report their "on the clock" hours via Grady's timekeeping system.

69. Grady knew O'Connor and the other Hourly Employees were non-exempt employees entitled to overtime wages.

70. Grady knew it paid O'Connor and the other Hourly Employees non-discretionary bonuses and shift differentials.

71. Grady knew it was required to include these non-discretionary bonuses and shift differentials in their regular rates of pay.

72. Grady knew these non-discretionary bonuses and shift differentials were not included in O'Connor's and the other Hourly Employees' regular rates of pay for overtime purposes.

73. And Grady knew the FLSA requires it to pay O'Connor and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

74. Grady's failure to pay O'Connor and the other Hourly Employees overtime at the required rates—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

75. Grady knowingly, willfully, and/or in reckless disregard of the FLSA carried out its unlawful bonus pay scheme that deprived O'Connor and the other Hourly Employees of overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek.

## CAUSE OF ACTION
### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

76. O'Connor brings his FLSA claim as a collective action on behalf of himself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

77. Grady violated, and is violating, the FLSA by employing non-exempt employees such as O'Connor and the other Hourly Employees in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

78. Grady's unlawful conduct harmed the Hourly Employees by depriving them of the overtime wages they are owed.

79. Accordingly, Grady owes the Hourly Employees the difference between the wages actually paid and the required overtime wages actually earned.

80. Because Grady knew or showed reckless disregard for whether this bonus pay scheme violated the FLSA, Grady owes the Hourly Employees these wages for at least the past 3 years.

81. Grady is also liable to the Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

82. Finally, O'Connor and the other Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## JURY DEMAND

83. O'Connor demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, O'Connor, individually and on behalf of the other Hourly Employees, seeks the following relief:

> a. An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

    b.    An Order finding Grady liable to O'Connor and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

    c.    A Judgment against Grady awarding O'Connor and the other Hourly Employees all their unpaid overtime wages, liquidated damages, and any other penalties available under the FLSA;

    d.    An Order awarding attorneys' fees, costs, and expenses;

    e.    An Order awarding pre- and post-judgement interest at the highest applicable rates; and

    f.    Such other and further relief as may be necessary and appropriate.

Dated: December 8, 2025                Respectfully submitted,

**MORGAN & MORGAN, PA**

By: */s/ Jeremy Stephens*
    Jeremy Stephens
    GA Bar No. 702063
191 Peachtree Street, NE
Suite 4200
P.O. Box 57007
Atlanta, Georgia 30343-1007
Telephone: (404) 965-1682
jstephens@forthepeople.com

C. Ryan Morgan
GA Bar No. 711884
20 North Orange Ave., 15th Floor
Orlando, Florida 32801
Telephone: (407) 420-1414
Facsimile:   (407) 245-3401
rmorgan@forthepeople.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:   (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:   (713) 877-8065

rburch@brucknerburch.com

*Pro hac vice application forthcoming*

**ATTORNEYS FOR O'CONNOR &
THE HOURLY EMPLOYEES**